Bonnie MacNaughton (Bar No. 107402)
Ian Harris (*pro hac vice forthcoming*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:     (206) 622-3150
Facsimile:     (206) 757-7700
Email:         bonniemacnaughton@dwt.com
               ianharris@dwt.com

Tim Cunningham (*pro hac vice forthcoming*)
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 4200
Portland, OR 97201
Phone:         (503) 241-2300
Facsimile:     (503) 778-5299
Email:         timcunningham@dwt.com

John D. Freed (Bar No. 261518)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:         jakefreed@dwt.com

Attorneys for Plaintiffs
AMAZON.COM, INC., AMAZON TECHNOLOGIES, INC., and RING LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation, AMAZON TECHNOLOGIES, INC., a Nevada corporation, and RING LLC, a Delaware limited liability company, | Case No. |
| | **COMPLAINT; DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| PIONERA INC., a California corporation, MANOJ GOEL, an individual, and DOES 1-50, | |
| Defendants. | |

## I.   INTRODUCTION

1.      Amazon.com, Inc. and its subsidiary, Ring LLC, offer products and services designed to delight customers, including Amazon's Prime Video service and Ring's home security systems.  As part of Amazon and Ring's customer experience, they each provide free customer support for their products and services, including activation support for Amazon Prime Video and Ring security systems.  Customers have come to depend on Amazon and Ring to deliver excellent products and services, and support for those products and services when needed.  This is a key part of Amazon and Ring's customer promise and reflects their guiding leadership principle of customer obsession.

2.      Defendants Pionera, Inc., Manoj Goel, and the call centers they work with, target customers seeking support for Prime Video and Ring security systems with misleading websites that deceive customers to believe they are interacting directly with Amazon or Ring.  The purpose of Defendants' scheme is to obtain payments (often hundreds of dollars) from victims for unnecessary and sometimes even fabricated tech support services.  Defendants also charge victims for tech support services that Amazon provides for free.  Beyond the financial losses suffered by victims, Defendants undermine customer trust in Amazon and Ring by providing false and misleading information to customers about Amazon and Ring's products and services.  These statements further confuse customers and interfere with the expected customer experience with Amazon and Ring's genuine products and services.

3.      Amazon and Ring bring this lawsuit to protect customers from further harm and hold Defendants responsible for their unlawful conduct.

## II.   PARTIES

4.      Amazon is a Delaware corporation with its principal place of business in Seattle, Washington.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

5.       Amazon Technologies, Inc. ("Amazon Technologies") is a Nevada corporation with its principal place of business in Seattle, Washington.  Amazon Technologies is a subsidiary of Amazon and is the registered owner of certain intellectual property rights associated with Amazon and affiliated businesses, including the Ring trademarks described herein.

6.       Ring is an Amazon subsidiary with its principal place of business in Hawthorne, California.  Ring manufactures and sells smart home security products, including the Ring Video Doorbell, indoor and outdoor security cameras, alarm security kits, and smart lighting.

7.       Pionera Inc. is a California corporation registered at the address 50 Iron Point Circle Ste. 140, Folsom, CA 95630.[1]  The company's Chief Executive Officer, Secretary, Chief Financial Officer, sole director, and agent for service of process is the individual Manoj Goel. On information and belief, Pionera's address for service of process—452 Fisher Circle, Folsom, CA 95630—is Goel's home address.  Pionera and Goel are liable to Plaintiffs for the damages alleged in this Complaint because of their direct participation in the alleged activities.

### III.     JURISDICTION

8.       The Court has original subject matter jurisdiction over Plaintiffs' federal claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and cybersquatting (15 U.S.C. § 1125(d)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  This Court has jurisdiction over the common law claims herein pursuant to 28 U.S.C. § 1338(b) because they are joined with a substantial and related claim under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq*.

9.       The Court has personal jurisdiction over Pionera and Goel because they reside in this district.  Further, on information and belief, Defendants transacted business and committed tortious acts within and directed to this district, and Plaintiffs' claims arise from those activities.

---

[1] Pionera dissolved in February 2022, but it remains liable for the claims alleged herein.  *See* Cal. Corp. Code § 2010.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the district, and 28 U.S.C. § 1391(c) because Defendants reside in the district.

11. This case is properly assigned pursuant to Civil L. R. 120(d) because it arises out of Defendants' acts within Sacramento County.

## IV.    FACTS

### A.    Amazon

#### 1.    Prime and Prime Video

12. Customers with Amazon accounts have the option of subscribing to Amazon's Prime subscription service.  Prime members enjoy an array of benefits, including free delivery, content streaming, exclusive shopping deals and rewards, among many others.  Millions of Prime members enjoy entertainment, savings, and shopping benefits—including fast, free delivery, hassle-free returns, and a seamless checkout experience—every day.  To give members the broadest possible selection, low prices, and a convenient shopping experience, Amazon has invested billions of dollars in infrastructure that helps small and medium-sized merchants offer Prime shopping benefits on Amazon.com, empowering them to reach new customers and grow their businesses.

13. Relevant to this case, Prime members have access to Prime Video, a service to stream digital video content using a range of devices, including smart televisions, tablets, and plug-in streaming devices (such as Amazon's Fire TV Stick).  Customers wishing to use the Prime Video app on their devices must connect the app to their Amazon account by registering the device on Amazon's website, amazon.com/mytv.  This is done by entering a six-digit alphanumeric "registration code" on the website.

14. Amazon offers free customer support for any issues that may arise connected to Prime Video.  Customers may contact Amazon through a variety of channels, including

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

Amazon's website and by phone.  Amazon does not charge for this support and does not charge customers for activating Prime Video on their devices.

### 2.  Ring

15.     Ring's mission is to make neighborhoods safer by providing home security devices and services that help customers protect their homes against break-ins, floods, and fires. Ring's Video Doorbells, Security Cameras, and Smart Lighting products help make home security accessible and convenient.  Ring's products allow customers to monitor their homes for a variety of hazards and Ring's professional monitoring service can quickly dispatch emergency services to customers' homes as needed.

16.     Ring provides customer support via dedicated phone, online chat, and email channels.  Ring provides free assistance to users setting up Ring devices through these dedicated channels.  Ring does not charge activation fees for its products.  Third party vendors are not authorized to charge device activation fees on behalf of Ring.

17.     As alleged in this Complaint, the following trademarks and service marks (collectively "Ring Marks") were unlawfully used to further Defendants' scheme:

| Trademarks | Registration Nos. |
|---|---|
| RING | 4724984<br>6142106<br>5289328<br>5764224<br>5676741<br>5808247<br>6647390 |
| ring | 5776163<br>6322404 |

18.     The Ring Marks have been used exclusively and continuously by Plaintiffs and have never been abandoned.  The above U.S. registrations for the Ring Marks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

1   The registrations for the Ring Marks constitute prima facie evidence of their validity and of

2   Plaintiffs' exclusive right to use the Ring Marks pursuant to 15 U.S.C. § 1057(b).

3               **B.      Tech Support Scams**

4          19.     Based on publicly available data, tech support scams victimize hundreds of

5   thousands of people every year, which results in tens of millions of dollars in reported losses.[2]

6   As these are just reported numbers, the scope of the problem is likely much larger.  These scams

7   disproportionately affect the elderly, who are both more likely to fall victim to the scam and to

8   lose more money during the scam.

9          20.     Traditionally, tech support scams focused on purported vulnerabilities in a

10  computer's operating system or other software as the material misrepresentations made to

11  victims in order to sell fraudulent services.

12         21.     Given the rise of internet-connected devices beyond traditional computers—such

13  as Ring security devices and smart televisions with software like the Prime Video app—bad

14  actors now target potential victims seeking assistance with these devices.  Bad actors target

15  victims through a variety of means, including online advertisements that render pop-ups, paid

16  search results, websites, and mobile applications.  These methods prompt victims to call a toll-

17  free number that connects them to the bad actors.

18         22.     Once connected, the bad actors typically gain remote access to victims' computers

19  (under the guise of solving the victims' problems).  With the remote access, the bad actors

20  deceive victims into believing their devices have technical issues or account issues that prevent

21  the device from working properly.  The purpose of these false statements is to sell unneeded

22  services or gain access to victims' financial accounts.

23

24  [2] "Cyberattacks are the fastest growing crime in the U.S.  Recent reports indicate a 473% increase in healthcare email fraud over a two-year period, an increase in online crimes against children, an increase in cyberattacks through mobile devices, and a 40.9% increase in global phishing attacks."  Eileen Decker, *Full Count?: Crime Rate Swings,*

25  *Cybercrime Misses and Why We Don't Really Know the Score*, 10 J. NAT'L SECURITY L. & POL'Y 583 (2020) (internal citations omitted) (advocating for increased efforts to measure cybercrime).

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

C.   **Defendants Deceive People into Purchasing Unnecessary Tech Support Services for Ring Devices and Amazon Services**

23.     Defendants run a tech support fraud scheme.  Defendants recruit victims through websites or other advertisements that purport to offer genuine services to help users with Ring devices or other Amazon services.  Defendants use these websites to divert victims from Ring's and Amazon's genuine websites, then deceive victims into believing an issue exists with their Ring device or Amazon service—when no such issue exists.  Defendants prey on these victims to sell them "services" in order to "fix" the issue.  Defendants' services are unnecessary and harm innocent victims.

### 1.     Pionera and Goel

24.     Defendant Goel owns and operates Pionera.  The company lists Goel's residence in Folsom, California as its business address.

25.     A website for Pionera Inc. was located at http://pionera.us.[3]  The website stated Pionera provides a variety of computer and device related services, such as network repair and set-up, and internet and wi-fi services.

26.     Pionera's website listed the address 50 Iron Point Circle Suite 140, Folsom, CA 95630 and the phone number 800-841-6516.

27.     According to public records, the Pionera website used services from Cloudflare, Inc. through IP address 172.67.148.64.  The domain was registered on October 7, 2020 by Pionera Inc. with GoDaddy.com, LLC.  The registrant's phone number is listed as 916-397-1555.

### 2.     Defendants Target Victims Seeking Help with Ring Devices

28.     On information and belief, Defendants control and operate websites that falsely claim to offer Ring setup and tech support services, two of which are discussed below (the

---

[3] As of June 18, 2022, Pionera's website is no longer active.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

"Subject Websites").  The Subject Websites feature similar website language, graphics, and hyperlinks, and have overlapping phone numbers.

**a.**        **Website 1: ringssupport.com**

29.     While active, Website 1 used the Ring Marks and other tactics to deceive victims into believing it was affiliated with Ring.  The deception started with the domain, ringssupport.com, which unlawfully used the Ring Marks.

30.     Website 1 also blatantly referred to itself as being associated with Ring.  For example, under an "About Us" heading on its main page, Website 1 stated: "We **at Ring** always aim to secure your house with our state-of-art innovations.  We build products to give you all-round security at affordable prices." (emphasis added.)  A partial screenshot of the website is below:



31.     This misstatement is consistent with other portions of Website 1, where Defendants deceived victims into believing Website 1 was operated by Ring by using phrases

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

like "at Ring" or "by Ring."  Website 1 also used a graphic banner called "Ring Support", and

prominently featured images of Ring's products (with the Ring Marks).  A partial screenshot of

the website is below:



**b.      Website 2: smartdeviceservices.com**

32.     Like Website 1, Website 2 uses Ring Marks and other tactics to deceive victims

into believing it is affiliated with Ring.  Website 2 features a subpage titled "Ring Support

Contact" that uses Ring Marks to advertise tech support services targeting Ring customers.  A

Ring Trademark is placed next to RING-SUPPORT.COM (which public records indicate is an

unregistered domain name), an email address for support@smartdeviceservices.com, and the

phone number 530-455-9395, which belongs to Defendants.  This subpage on Website 2

deceives Ring customers by stating that, "If there is any problem installing the apps, please dial

the Ring support phone +1 530-455-9395 immediately."  Readers are also instructed to click on

embedded links such as "Ring Firmware update" and "integrating Ring with Amazon Alexa"

that do not actually provide the stated updates or information, but instead take victims to a page

encouraging them to contact Defendants.  Screenshots of these sections of Website 2 are below:

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

33.     Similarly, Website 2 has a subpage titled "Ring Support" that states, "Customers can speak to Ring tech support for any below mentioned technical scenarios."[4] This subpage on Website 2 deceives customers into contacting Defendants by using phrases like "Contact Ring tech support @ +1 530-455-9395 all 7 days" to create the impression that the phone number is the official Ring technical support phone number.

---

[4] URL: https://smartdeviceservices.com/tech-support/

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.



34.    Website 2 contains a disclaimer stating that it is "not affiliated with any third party such as Microsoft, Apple, Amazon or Google."  Far from insulating Defendants, this statement demonstrates Defendants' knowledge that they have no right to use Ring's or Amazon's brand to deceive customers, and that their business practices are likely to cause customer confusion.

35.    Although Website 2 appears to have been redesigned between January and April 2022, prior versions of Website 2 also used Ring Trademarks to deceive victims into contacting Defendants instead of Ring.  As of January 10, 2022, Website 2 featured the same "Ring Support" banner as Website 1, displayed numerous photographs of Ring devices, and purported to offer Ring video doorbell, security camera system, and surveillance system support services. A partial screenshot of Website 2 as of January 10, 2022 is below:

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.



### 3. Defendants' Sale of Fraudulent Tech Support Services

36.    The purpose of the Subject Websites is to deceive victims into calling Defendants' phone number.  Once victims call the number, Defendants falsely claim there is an issue with the victims' Ring device or account and attempt to sell victims unnecessary services.

37.    Ring customers report calling 530-455-9395 based on the belief the number was the official number for Ring's technical support services.  Once connected, Defendants told Ring customers that there were issues with the customers' Ring device or account and requested remote access to the customers' computers via remote desktop software programs like SupRemo.  Then, Defendants attempted to sell the customers unnecessary services based on false premises like a corrupted Wi-Fi network.

38.    In addition, an investigator working for Amazon's counsel contacted Defendants and was twice sold unnecessary services after being falsely told issues existed with a Ring device.

### a. First Test Purchase

39.    On September 29, 2021, an investigator called a phone number listed on both of the Subject Websites (530-455-9395) and left a voicemail requesting support for a Ring device.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

1   The investigator also submitted a message through Website 1's "Leave a message" form,

2   providing a name, email address, and phone number, and requesting help with a Ring device.

3         40.    The next day, the investigator received a call from the phone number 279-600-

4   5913 and spoke with someone who identified himself as "Bob" from Ring Support.  The

5   investigator and Bob scheduled a follow-up call for later in the day.  That afternoon, at the time

6   of the scheduled call, the investigator called 279-600-5913 and received a generic voicemail

7   stating that "the TextNow subscriber you are trying to reach is not available."  Then, the

8   investigator placed another a call to 530-455-9395 and spoke with someone who identified

9   himself as "John from Ring Support."  The investigator told John that the investigator was

10  having trouble setting up their Ring Doorbell.  Without further assessing the problem with the

11  investigator's Ring Doorbell, "John from Ring Support" relayed he could help for a one-time

12  charge of $99.99 to update the firmware and security of the Ring Doorbell.  Ring does not charge

13  for customer support to help setup Ring devices, or to update a device's firmware.

14        41.    The investigator agreed to the $99.99 charge, and "John from Ring Support"

15  directed the investigator to secure.logmeinrescue.com where John told the investigator to enter

16  the access code 398691.  The investigator entered the code, which prompted the remote access

17  tool LogMeIn Rescue to download on the investigator's computer and allowed John to access the

18  investigator's computer remotely.

19        42.    "John from Ring Support" next asked if the investigator had a Ring Doorbell

20  account.  The investigator told John that the investigator did not have a Ring account and John

21  used his remote access to the investigator's computer to direct the investigator to Ring's official

22  site at www.ring.com.  John clicked on the website's login hyperlink and created a new Ring

23  account for the investigator.

24        43.    "John from Ring Support" next directed the investigator to complete a PayPal

25  payment form for a $99.99 charge for "IT Services" from a billing account registered to

13

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

1  "SHIKHA CHAUDHARY."  The investigator paid the invoice with a credit card and received a

2  copy of a paid invoice, shown in the screenshot below:



12      44.      After the payment was processed, "John from Ring Support" provided the

13  investigator with the phone number 800-841-6516 (the same phone number listed on the Pionera

14  website) and told the investigator that their phone call would be ended while John finished

15  securing the remote connection to the investigator's computer.

16      45.      John ended the call and performed two acts on the investigator's computer

17  without informing the investigator: (1) ran a continuous ping of the IP address 142.250.190.4

18  (Google Cloud); and (2) opened the Microsoft Malicious Software removal tool and ran a full

19  scan for malicious software.

20      46.      "John from Ring Support" then called the investigator back.  John pulled up a

21  YouTube video and asked the investigator to follow the instructions on the video to reset the

22  Ring Doorbell camera.  While the YouTube video was playing, John attempted to access the

23  investigator's computer camera without explaining why.

24      47.      Once the YouTube video concluded, "John from Ring Support" created a .TXT

25  file on the investigator's computer with his full name ("John Peterson"), the phone number 800-

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

841-6516 (the same phone number listed on Pionera's website), and the merchant name "IT

Services," as shown in the screenshots below:





48.     "John from Ring Support" then opened the investigator's Window's Security

settings and dismissed the computer's "Virus & threat protection," "Account protection," and

"App & browser control" warnings, and ended the call.

49.     None of the steps "John from Ring Support" took on the investigator's computer

updated the firmware or security of the investigator's Ring device.

**b.     Second Test Purchase**

50.     On October 22, 2021, an investigator initiated a second test purchase by dialing

the phone number 530-455-9395.  In addition to being listed on Website 1 and Website 2, this

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

phone number was listed on the website ringcamsupport.blogspot.com at the time of the second

test purchase with links to Website 1, as shown in the screenshot below:



51.     The investigator received a recorded message stating, "Thank you for calling.

Please press 1 for the operator."  The investigator pressed 1 and the call was answered by a

representative who did not give a company name stating, "Thank you for calling.  How may I

help you?"  The investigator asked, "Am I speaking with Ring customer service?"  The

representative stated, "Yes."

52.     The investigator indicated that he was having difficulties setting up a Ring camera

device and the representative stated that the investigator would need to speak with a member of

the technical team, who would call him back.  Later that day, the investigator received a return

call from the phone number 916-694-6362 and spoke with someone who identified himself as

"Paul Daniels" from "Ring Support."

53.     At Paul's request, the investigator provided Paul with a model number for the

investigator's Ring device.  Paul then told the investigator that the item's software was

corrupted, its warranty was expired, and falsely claimed that the device was "registered under the

name Janet Rose," when it was not.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

54.     "Paul from Ring Support" told the investigator that he could fix the investigator's Ring device but claimed that there would be a one-time charge of $50.00.  Paul also stated that he would need to connect to the investigator's computer to upload software and to update the firmware and security of the device.

55.     The investigator agreed to the charge, and "Paul from Ring Support" directed the investigator to secure.logmeinrescue.com where Paul told the investigator to enter the access code 794797.  The investigator entered the code, which prompted LogMeIn Rescue to download on the investigator's computer.

56.     After installing LogMeIn Rescue, the investigator received a notification that "PIONERA INCORPORATIONS" had established a remote connection with his computer, as shown in the screenshot below:



57.     The investigator also received an email notification from logmeinrescue.com confirming that "PIONERA INCORPORATIONS" had established a remote connection to the

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

investigator's computer.  As shown in the following screenshot, this email notification listed

support@pionera.us as the contact address for the entity accessing the investigator's computer:



58.     "Paul from Ring Support" took control of the investigator's computer, navigated

to supremocontrol.com, and clicked on a "Download" icon, which caused the remote access tool

Supremo to download.  When the investigator asked Paul what he was downloading, Paul stated,

"it is additional security and firewall that will help get your doorbell connected."

59.     "Paul from Ring Support" told the investigator that he needed to pay an e-mail

invoice and asked the investigator to open his email account.  Following these directions, the

investigator saw an e-mail invoice from "Akash Kumar" via service@paypal.com with

"akashkumar200586@gmail.com" listed as the reply email address.  The invoice stated, "Akash

Kumar sent you an invoice for $50.00 USD" and "Note from Akash Kumar, IT Service."

60.     Using his remote control of the investigator's computer, "Paul from Ring

Support" clicked on the invoice's "View and Pay Invoice" icon and instructed the investigator to

provide the payment details in the required fields on the "PayPal Guest Checkout" page.  The

investigator provided payment information.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

61.     At this point, the investigator noted the sound of another individual saying "Janet Rose" in the background, suggesting that Paul was working from a call center with other individuals.

62.     The investigator's payment was processed, and the investigator received an email from service@paypal.com confirming payment in the amount of $50.00 to "Akash Kumar" (akashkumar200586@gmail.com).  A screen also appeared on the investigator's computer with the message, "Your payment was successful. Invoice #0001. Akash Kumar, mahiuddin pur kanawni, shipra sun city, Ghaziabad, Uttar Pradesh, 201014, INDIA, akashkumar200586@gmail.com."A screenshot is below:



63.     After the investigator's payment, "Paul from Ring Support" reported that "I was just able to connect your doorbell to the Ring server."  Paul then opened a Notepad document on the investigator's computer and entered the following text: "TollFree No: 1-800-841-6516; Technician name: John Peterson; Case Id: PD200586; Merchant: Ring/IT Service"—the same name and phone number provided during the First Test Purchase.  A screenshot is below:

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

1

2

3

4

5

6

7

8

9

10



11   64.   Next, "Paul from Ring Support" told the investigator that a technician named

12   "John" would contact the investigator shortly to "finish setup of the Ring camera" and ended the

13   call but retained remote control of the investigator's computer.  The investigator observed Paul

14   perform three acts with his continued control: (1) Paul launched "Microsoft Windows Malicious

15   Software Tool" and ran a full scan; (2) Paul ran several internet speed tests; and (3) Paul opened

16   the investigator's email inbox and deleted the e-mail from "Akash Kumar" containing Invoice

17   0001 and the e-mail from "service@paypal.com" confirming the investigator's payment.

18   65.   The investigator then received a call from 1-916-253-8727.  The caller identified

19   themselves as "John Peterson" with "Ring support" (the same name used during the First Test

20   Purchase).  John said that he was calling to "assist with setup of the Ring camera."

21   66.   "John from Ring Support" told the investigator to go to the Google Play store and

22   download "the Rescue Mobile screen share app" so that John could walk the investigator through

23   the setup process on his phone.  The investigator told John that the app would not download to

24   the investigator's phone.

25

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

67.     Using his remote control of the investigator's computer, "John from Ring Support" then searched for "Ring doorbell setup" in the investigator's web browser, selected a YouTube video made by Ring ("How to Set Up Your Ring Video Doorbell," URL: https://youtu.be/9yTg-iWPy28), and said, "please watch this video I created."  John did not create this video.  It is a video created by and owned by Ring and available for streaming on Ring's YouTube channel for Ring customers.

68.     The investigator watched the video and when it was over, John told the investigator that the "firewall and security are now installed" on the investigator's Ring device. Neither John nor Paul actually installed any software, firmware, or security updates the investigator's Ring device, despite having falsely claimed to do so.

69.     Before ending the call, "John from Ring Support" reminded the investigator to call 1-800-841-6516 (the same phone number listed on the Pionera website) if any further assistance was needed.

### c.     Fraudulent Activation Fee for Prime Video

70.     Upon information and belief, Defendants also mislead and confuse Prime Video customers who attempt to set up Amazon's genuine app on their devices.

71.     To activate the Prime Video app on streaming devices, customers enter an activation code displayed on their device on the website amazon.com/mytv.

72.     Defendants divert customers from this genuine activation process through deceptive messaging that falsely claims an error occurred in the activation process.  The message prompts victims to call a phone number connected to Defendants.  Once connected, Defendants make false claims about the status of the consumers' Prime Video accounts and the authenticity of the Defendants' services in order to deceive consumers into believing they need to pay a fee to activate Prime Video on their devices.  Defendants use this tactic to sell unnecessary services to Amazon's customers.

---

21

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

## V.    CAUSES OF ACTION

## **FIRST CAUSE OF ACTION**

### **Trademark Infringement (15 U.S.C. § 1114)**

### **By Ring and Amazon Technologies**

73.    Plaintiffs incorporate by reference the factual allegations contained in Sections I–IV as though set forth herein.

74.    Defendants' activities infringe the Ring Marks.

75.    Plaintiffs advertise, market, and distribute their products and services using the Ring Marks, and use them to distinguish their products and services from the products and services of others in the same or related fields.

76.    Because of Plaintiffs' long, continuous, and exclusive use of the Ring Marks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Plaintiffs.

77.    The Subject Websites use the Ring Marks in commerce in a manner that is intended to cause confusion, mistake, or deception as to source, origin, or authenticity of the Subject Websites and Defendants' services.

78.    Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the Subject Websites and Defendants' services originate with or are authorized by Plaintiffs, thereby harming Amazon, Ring, and innocent victims.

79.    At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their lack of authority to use the Ring Marks and the confusion that the use of the Ring Marks had on consumers as to the source, sponsorship, affiliation, or approval by Plaintiffs of the Subject Websites and services.

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

80.     Defendants are subject to liability, jointly and severally, for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

81.     As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without a detailed accounting by Defendants.  Alternatively, Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c).

82.     Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Ring Marks are unique and valuable property; (b) in addition to the significant harm that Defendants have caused to innocent customers, Defendants' infringement constitutes harm to Plaintiffs' reputation and goodwill such that Plaintiffs could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the services being offered by the Subject Websites; and (d) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

## SECOND CAUSE OF ACTION

### Trademark Dilution (15 U.S.C. § 1125(c))

### By Ring and Amazon Technologies

83.     Plaintiffs incorporate by reference the factual allegations contained in Sections I–IV as though set forth herein.

84.     Plaintiffs have exclusively and continuously promoted and used the Ring Marks. As two of the world's most well-known technology companies, the Ring Marks have become

23

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

famous, distinctive, and well-known symbols of Plaintiffs—well before Defendants began using the Ring Marks in association with their goods or services unaffiliated with Plaintiffs.

85.     The actions of Defendants including, but not limited to, their unauthorized use of the Ring Marks in commerce to deceive users into believing the Subject Websites and services being offered are affiliated with Plaintiffs are likely to cause dilution of the Ring Marks by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

86.     As a result of Defendants' willful conduct, Plaintiffs are entitled to recover their actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

87.     Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent customers, Defendants' acts have caused irreparable injury to Plaintiffs.  The injury to Plaintiffs is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

**THIRD CAUSE OF ACTION**

**Cybersquatting (15 U.S.C. § 1125(d))**

**By Ring and Amazon Technologies**

88.     Plaintiffs incorporate by reference the factual allegations contained in Sections I–VI as though set forth herein.

89.     Plaintiffs have exclusively and continuously promoted and used the Ring Marks. As two of the world's most well-known technology companies, the Ring Marks have become famous, distinctive, and well-known symbols of Plaintiffs—well before any of the Defendants registered the domain ringssupport.com.

90.     Defendants registered and used the domain ringssupport.com with a bad faith intent to profit from the Ring Marks based on a number of factors, including the fact that the

24

1    domain is used in furtherance of a scheme to defraud consumers by deceiving them into

2    believing Defendants' domains are affiliated with Ring.

3        91.    The domain ringssupport.com is confusingly similar to or dilutive of one or more

4    of the Ring Marks.

5        92.    Plaintiffs are entitled to actual damages under 15 U.S.C. § 1117(a), or in the

6    alternative, statutory damages under 15 U.S.C. § 1125(d)(1).

7        93.    Plaintiffs are entitled to have ownership of the domain ringssupport.com

8    transferred to them, or in the alternative to have this domain forfeited or cancelled.

9        94.    Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for

10   Relief below.  In addition to the significant harm that Defendants have caused to innocent

11   customers, Defendants' acts have caused irreparable injury to Plaintiffs.  The injury to Plaintiffs

12   is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully

13   compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

14                            **FOURTH CAUSE OF ACTION**

15           **False Affiliation and Designation of Origin (15 U.S.C. § 1125(a))**

16                                **By All Plaintiffs**

17       95.    Plaintiffs incorporate by reference the factual allegations contained in Sections I–

18   IV as though set forth herein.

19       96.    Plaintiffs advertise, market, and distribute their products and services using the

20   Ring Marks to distinguish their products and services from the products and services of others in

21   the same or related fields.

22       97.    Because of Plaintiffs' long, continuous, and exclusive use of the Ring Marks, they

23   have come to mean, and are understood by customers, users, and the public to signify, products

24   and services from Plaintiffs.

25

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.

98.     Plaintiffs have also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images for their websites and products.

99.     Defendants' wrongful conduct includes the use of the Ring Marks, names, and/or imitation designs (specifically displays, logos, icons, and/or graphic designs virtually indistinguishable from the Ring designs), and false statements regarding Amazon and Ring, and their products or services in connection with Defendants' commercial advertising or promotion.

100.     Defendants have used, and continue to use, the Ring Marks and/or imitation designs to deceive customers.  On information and belief, Defendants' wrongful conduct misleads and confuses their users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, or distributed in connection with the Ring Marks, names, and imitation visual designs, and wrongfully trades upon Plaintiffs' goodwill and business reputation.

101.     Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

102.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

103.     Plaintiffs are further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Plaintiffs.  The injury to Plaintiffs is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

104.     As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without a detailed accounting by Defendants.

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment**

**By All Plaintiffs**

105.    Plaintiffs incorporate by reference the factual allegations contained in Sections I–IV as though set forth herein.

106.    As a result of Defendants' scheme, Defendants obtained money under false and fraudulent pretenses by selling Plaintiffs' customers unnecessary services.

107.    On information and belief, Defendants derived benefits by selling unnecessary services to Plaintiffs' customers in a manner and amount to be determined.  Defendants' scheme was at Plaintiffs' expense and harmed Plaintiffs and their customers.

108.    Defendants have been unjustly enriched by their scheme.

109.    Defendants' actions damaged Plaintiffs, including but not limited to the time and money spent investigating and mitigating Defendants' unlawful conduct.

110.    As a result, Plaintiffs are entitled to an accounting and restitution from Defendants in an amount equal to Defendants' unjust enrichment.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.      That the Court enter judgment in favor of Plaintiffs on all claims;

B.      That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or participation with them, from:

        (i)      Using the Ring Marks in connection with any customer support services, or sale of goods or services;

        (ii)     Registering domains that include, are confusingly similar to, or dilutive of, the Ring Marks;

27

        (iii)     Using any other indication of Plaintiffs' brands in connection with any sale of goods or customer support services;

        (iv)     Making any statement of an affiliation or connection to Plaintiffs in connection with any sale of goods or customer support services; or

        (v)     Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the subparagraphs above;

C.     That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all gross and net proceeds earned from innocent victims, including an identification of those victims;

D.     That Defendants' profits earned from innocent customers, as alleged in this Complaint, be disgorged pursuant to 15 U.S.C. § 1117(a);

E.     That Defendants be required to pay all actual damages which Plaintiffs have sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

F.     That, instead of actual damages, Defendants be required to pay the maximum statutory damages for their infringement of the Ring Marks pursuant to 15 U.S.C. § 1117(c);

G.     That Defendants be required to pay the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, or otherwise by law;

H.     That Defendants be required to pay restitution to Plaintiffs in an amount equal to their unjust enrichment; and

I.     That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

1    DATED this 23rd day of August, 2022.

2                                    DAVIS WRIGHT TREMAINE LLP
                                     Attorneys for Plaintiffs

3

4                                    By:  */s/ John D. Freed*
                                     John D. Freed (Bar No. 261518)
5                                    DAVIS WRIGHT TREMAINE LLP
                                     505 Montgomery Street, Suite 800
6                                    San Francisco, CA 94111
                                     Telephone: (415) 276-6500
7                                    Facsimile:  (415) 276-6599

8                                    Bonnie MacNaughton (Bar No. 107402)
                                     Ian Harris (*pro hac vice forthcoming*)
9                                    DAVIS WRIGHT TREMAINE LLP
                                     920 Fifth Avenue, Suite 3300
10                                   Seattle, WA 98104
                                     Telephone: (206) 622-3150
11                                   Facsimile:  (206) 757-7700

12                                   Tim Cunningham (*pro hac vice forthcoming*)
                                     DAVIS WRIGHT TREMAINE LLP
13                                   1300 S.W. Fifth Avenue, Suite 4200
                                     Portland, OR 97201
14                                   Telephone: (503) 241-2300
                                     Facsimile:  (503) 778-5299

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT; DEMAND FOR JURY TRIAL
Case No.